Judge Hitchcock,
delivered the opinion of the court:
In the present action the plaintiff seeks to recover back money "by him paid when in contract to the defendant, and which he claims bas been rescinded, or which he has a right to rescind, in consequence of a failure, on the part of the defendant, to comply with his part of the contract. The only contract between the parties, ■in pursuance of which money was paid by the plaintiff to the de-' fendant, was made on August 7, 1819. In pursuance of this contract five hundred and sixty dollars were paid.- And whether the plaintiff claims to receive this amount or only the balance, after ■deducting three hundred dollars, which was paid to him by the defendant and Henline, does not clearly appear. 1 presume, however, it is the balance merely. Nor does it very clearly appear' which of the three contracts (for the three were made between the parties) it is sought to rescind. The general'principle can not be- *346 controverted, that where one man pays to another money upon a contract and the contract fails in consequence of an -act done by the opposite party, or in consequence of his inability to perform,, the money paid may be recovered back in this form of action. And the circumstances are numerous where the party paying the money, or other article +of property, may consider the contract as rescinded, and recover back his money. This is apparent from the cases cited by the plaintiff’s counsel. Whether this is a , case of that description remains to be considered. But under no circumstances can a plaintiff recover if the failure of the contract is attributable to an act of his. The action is an equitable action,, and as in chancery, he that would have equity must do equity, so in cases of this description.
In order to determine whether the verdict in this case is against the evidence, the law and equity of the case, as is insisted by the. plaintiff, it is necessary to examine the facts and inquire what legal or equitable inferences may be drawn from those facts.
On August 7, 1819, the defendant entered into a contract, under seal, by which he bound himself to convey to the plaintiff a quarter section of land, in the county of Stark, for five hundred and sixty dollars, which was paid. It does not appear, from the evidence before the court, that any time was fixed within which the-conveyance should be made. It was then incumbent on the defendant to make the conveyance in a reasonable time, or upon demand, after the payment of the money. And had he refused, the plaintiff might have considered the contract as rescinded, and would have had a right of -action against him for money had and received. No conveyance, however, was made, nor does it appear that any was demanded, and the business remained in this situation until December 20, 1822.
On this last day another contract or agreement was entered into-between the parties. This contract also was under seal; and by' it they agreed to exchange the quarter section of land in the county of Stark for a quarter section in the county of Columbiana, the defendant binding himself to convey this latter quarter-section to the plaintiff, on or before January 1, 1828. Now what-is the legal effect of this last contract upon the contract of 1819? It would seem to me that there could be no doubt that the latter was fully discharged; as much so as if it had been complied with, according to its strict letter. The parties make an exchange of *347 land, quarter section for quarter section. And as the title to the quarter section in Stark was not in the plaintiff, *but the defondant, it is in effect agreed that he shall retain it, and the plaintiff agrees to take his obligation, under seal, for the conveyance of the quarter section in Columbiana at a subsequent period. Everything appears to have been fair and bona fide. At least nothingtothe contrary appears, and is not to be presumed. After this, the plaintiff surely could not have any claim under the contract of 1819. True, an end was put to it, but not in such a manner as to-enable him to sue for and recover back the money paid, or to sue upon the contract itself and recover damage for its non-performance. By his own act, in concurrence with the-act of the defendant, it was closed, and he received that which he considered, and which the law would consider, as full satisfaction.
By the terms of the contract of 1822, a conveyance was to be-made of the land in Columbiana county, on or before January 1,, 1828. But before that time, to wit: on February 21,1824, another-agreement was made between the plaintiff and defendant, together-with Henline, with reference to the same subject matter, to wit: the quarter section of land in Columbiana. This agreement was-by parol or verbal. Before I proceed to examine it, it may be well to inquire into the relative situation of all the parties at that period. Henline was entitled to the certificate of entry of this land, which was then in the land office at Steubenville, subject to his-order. The first payment of' eighty dollars had been made, and upon the payment of the balance, the person entitled to the certificate could have a patent. Henline was under contract to transfer this certificate to the defendant, MeGrew, And from the circumstance that Henline paid the plaintiff two hundred dollars, it would seem that MeGrew must have paid him, Henline, in part or-in whole, for the quarter section. Probably, however, no more had, been paid than the two hundred dollars. MeGrew was under contract to convey this same quarter section to the plaintiff. The only evidence of title which any of the parties would then have, would, be the certificate of purchase, as no patent could issue until the-land was paid for in the office.
Such being the situation of the parties, they met on *February 21, 1824, and agreed, verbally, that Henline should transfer the>certificate direct to the plaintiff, and that the defendant andHenline should pay him three hundred dollars, a sum sufficient to pay- *348 the land out of the office, and which was paid, two hundred dollars .by Henline, and one hundred dollars by the defendant. On the ■ conclusion of this agreement, the plaintiff and defendant gave an order in favor of Henline, upon Shelton, in whose hands the contracts of 1819 and .1822 had been lodged for safe keeping, for him to deliver up the same to be canceled. By the terms of this contract or agreement, it will be seen that the defendant surrendered up all claims which he had upon Henline for the certificate for the • land. In fact, he put it out of his power to comply with the contract of 1822. He put it out of his power to procure the land. And ■ through his instrumentality, the plaintiff was furnished with means to buy the land out of the office and procure a patent in his own name. It seems to have been clearly the intention of all the parties that this power should be vested in him. From all the circumstances attending this transaction, there can be no doubt that it was the understanding at the time this agreement was made, that it should supersede the contract of 1822. Instead of the conveyance of the quarter section in Columbiana, the plaintiff agreed to receive the three hundred dollars, and also an assignment of the certificate, for which assignment he was to look to Henline. It was the intention to put an end to the last-named contract else why deliver it up to be canceled? Still, although an end was put to the contract, it was not under such circumstances as to give the plaintiff .a right of action. From this time the defendant might well suppose that he was discharged from any further liability. He had put it in the power of the plaintiff to obtain a title to the land, had furnished him the means with which to do it, and had procured his ■ order to have the contract canceled.
But suppose he was not thus discharged, let us see whether there is anything further in the evidence which would make him liable. From the time this last agreement was made between the plaintiff, • defendant, and Henline, we hear nothing further respecting the subject matter until 1829, except that the plaintiff stated that he did not want the ^certificate, and that he could do better with the money than to buy the land out of the office. But in the year 1829, and previous to the month of July, he sent his attorney .to the defendant with a copy of the two first contracts. The defendant then stated that Henline had transferred the certificate, .and that if he had not, he, the defendant, would refund the money. *349 In July the land was forfeited, and sold by the United States to other persons.
This evidence shows that the plaintiff has never acquired a title, but this would not give him a right of action, unless he had been prevented by some act, mistake, or default of the defendant It was not the duty of the defendant, but of the plaintiff, to pay the land out of the office, and the money with which to do it he-had received of the defendant. But this he did not do, nor is there any evidence that he-attempted to do it. It was not necessary that he should have the certificate for this purpose, for although he might not be able to acquire a patent without the certificate, he might have deposited the money, and thus have secured' the land. No time was specified within which the certificate was-to be transferred, yet there is no evidence to show that the plaintiff made an effort to obtain it by demand or otherwise. The transfer, however, was not to come from the defendant, but from-another person. Why all this neglect on the part of the plaintiff? It can be accounted for upon no other reason than the one-stated by himself, that he did not want the certificate, and could-do better with the money than to pay the land out of the office. This circumstance of the plaintiff’s lying by for so long a period, and-waiting until the time was about to elapse when the land would-be forfeited before he makes a single move, and then, instead of applying to the office to pay the money, or to Honline for a transfer of the certificate, applying, through his attorney, to the defendant with copies of the original contract, taken in connection with the other facts of the case, looks too much like a design on his part to wait until it should be out of the power of the defendant to procure a title, and then to call upon him for moneypaid some two years before. Or perhaps, which is the most favorable supposition for the plaintiff, this attempt to recover back money is an *after-thought. Upon the whole, it seems to the court that the verdict is consistent with the evidence, the law and equity of the case.
The next question is, whether the court erred in their instructions-to the jury. Amongst the other things, the court charged the jury “that if the plaintiff agreed to give up and cancel the aforesaid contract, between him and the defendant, on the verbal agreement aforesaid, and agreed to take the verbal promise of Henline to-transfer the aforesaid certificate and to accept of such transfer, and E. *350 ■the payment aforesaid, instead of the conveyance mentioned in the aforesaid second contract, between the plaintiff and defendant, that would exonerate the plaintiff entirely, although the ■plaintiff might have no right of action against Henline on such verbal agreement.”
Now I see nothing wrong in all this. The parties had a perfect right to cancel their contracts, and if they agreed to do it upon •sufficient consideration, such agreement would be obligatory upon them. It was certainly competent for the plaintiff to take the three hundred dollars and the assumption of Henline, to transfer the certificate in full satisfaction of the contract of 1822, and if he did so, the defendant must be discharged from the obligation ■of this contract. Otherwise, what would be the situation of the defendant ? He had given up all right on his part to call upon Henline for a transfer of the certificate. He had parted with the •money which would have enabled him to clear the land out of the office, and had paid that money over to the plaintiff, who took upon himself the performance of this task. If this was not such a settlement between the two parties as would discharge the defendant, it is difficult to conceive what compromise or settlement would do it. Now, can it be very material whether this “ verbal agreement" to transfer was or was not obligatory upon Henline. It was not the only or principal consideration passing between the parties. The payment of the money was of more consequence. But there was not only a payment of money, there was the surrender of a right on the part of the defendant to the plaintiff; ■the right to call upon Henline for transfer of the certificate, and the right to receive a patent for the land upon the payment of the purchase money.
*But is it-so that the plaintiff would have had no right of action against Henline ? It is supposed by the counsel for the ■plaintiff that this contract is within the statute to prevent.frauds, and therefore void. Section 5 of this statute has this clause : “No action shall be brought whereby to charge the defendant upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them,” unless the agreement or memorandum thereof be in writing. 29 Ohio L. 218. This was not a “ contract in sale of lands,” or of “ any interest ” in lands.- It was merely a contract for the transfer of a certificate, which would mot vest in the person to whom the transfer was made any “in *351 ierest in the land.” The only effect would he to place in his-hands evidence, which, upon the payment of a certain sum of money, would enable him to procure an “interest in the land.” If I am correct in this, the contract is not within the statute, and. of course is obligatory.
The court further charged the jury, “ that even if the plaintiff once had a right to rescind, if he neglected to exercise that right, until events so happened, by lapse of time or otherwise, that he could not be restored to his original situation, that the right to rescind here was taken away, altho ugh the right to rescind arose from the act of the plaintiff.”
The counsel for the plaintiff remarks “that he does not see the application of the doctrine of this part ot the charge to the facts submitted to the jury.” And certainly I do not perceive the necessity of this part of the charge. According to my apprehension of the facts, the doctrine of rescinding contracts has nothing or very little to do with the case. The defense relied upon is that there had been a compromise between the parties, and that although the defendant had not literally complied with his contract, he had made complete and adequate satisfaction. But undoubtedly the subject of the rescission of contracts was discussed upon the trial of the cause by the counsel, and the court were led to express an opinion upon that subject without reflecting, whether it were or were not necessary. But if it had no application to the facts of the case, what is to be the consequence? We consider it as well settled that, although a court may err in the expression of an opinion upon an abstract ^question of law, which is in no way involved in the decision of the case on trial, still there is no cause for the reversal of a judgment or setting aside a verdict.
The charge in this case is, however, substantially correct.
Where the plaintiff sues to recover back money paid upon a contract which has failed, he must show that he has done all in his power to restore the defendant to the sanie situation in which he was when the contract was made. If the possession of the property contracted for has passed to the vendee, it must be restored to the vendor; and if, owing to the negligence, or any other act of the vendee, it is not in his power to restore the possession, although he is not without remedy, still he can not have .the action for money had and received. He must sue upon his contract, and recover damages for its violation. For instance, A. *352 contracts to sell a quarter section of land to B., and receives one-half the purchase money. B. takes possession. The title afterward fails, or A. refuses to convey. B. may surrender the possession to A., thereby assenting to a rescission of the contract, and recover back the money paid in an action for money had and received. Or he may consider the contractas subsisting, and claim1 damages for its breach. In the latter case it would not be necessary, as a preliminary step, that he should surrender the possession. But suppose B. has sold the same land to C., and delivered unto him the possession. In such case he must resort to his action on the contract, because by his own act the possession had been transferred to another, whereby he is prevented from restoring his vendor to his original situation. I think these positions-can not be controverted. And, according to my understanding, this is the extent or meaning of the charge of the court.
Another reason urged for a new trial is the discovery of evidence, since the trial, material to the case. This newly-discovered evidence is not evidence, the effect of which will be to prove-new and distinct facts, but rather to prove facts by a new witness, which were testified to by other witnesses on the trial, and also to prove circumstances which will have a tendency to invalidate-the testimony of one of the defendant’s witnesses. This court will not grant a new trial to give a party the opportunity of introducing cumulative testimony merely, or to give him the-opportunity of impeaching the witnesses of his adversary. But there is in this case another reason why a new trial should not be granted on account of the discovery of this new testimony. Had it been before the jury, it would have still been their duty to return a verdict for the defendant.
An argument urged in favor of' the motion ought to have been-considered before. It is founded upon the promise made by the defendant to the attorney of the plaintiff, that he would refund the money if the certificate had not been transferred. If there was any legal obligation on the part of the defendant to refund the money, that obligation could be inferred without the promise. If there was no legal, but a moral obligation, to refund it, then that moral obligation would be a sufficient consideration to sustain the promise. Without consideration, the promise would be void. To my mind it is clear that there was no moral obligation resting upon the defendant to refund this money to the plaintiff. By the *353 agreement of 1824 he had been completely exonerated. It was rather owing to the neglect of the plaintiff himself, than to any act of the defendant, that he did not get a good and valid title to the and in Columbiana. There was, then, no consideration for this promise. It is therefore nudum pactum and void.
The motion for a new trial must be overruled, and judgment entered on the verdict.